SÁMUEL WYMAN AND SAMUEL G. WYMAN *vs.* SAMUEL RAE.
*December,* 1841.

The taking of a note of the purchaser for goods sold and delivered; certainly does not extinguish the original cause of action.

An action on the common counts, may be sustained by proof of the sale and delivery, although a note may have been given by the purchaser therefor.

If a note has been given in such case, its production is generally required for the security of the defendant, and not from any rule of evidence, which excludes proof of indebtedness, without the production of the note.

In an action upon the case for deceit, in giving a party a false credit, the vendor of the goods, the plaintiff, may prove the sale and delivery of the goods, and the indebtedness of the purchaser thereof, without producing the notes given for the payment of such goods.

If the defendant in such an action desired to show, that the credit given on the notes had not expired, the burthen of proof was upon him, he should have given notice to have them produced, and if not produced, proved their contents.

The law creates no presumption, that promissory notes are on time.

Where a party under the circumstances of the case, was not bound to produce certain promissory notes, he is under no obligation to account for their non-production, and evidence offered with that view only, is useless and inadmissible.

APPEAL from *Baltimore* County Court.

This was an action of *trespass upon the case,* brought upon the 16th April 1838, by *Samuel Wyman* and *Samuel G. Wyman,* merchants and partners trading under the firm of *Samuel Wyman & Co.,* against the appellee, to recover their damages, for that the appellee intending to deceive and defraud the said plaintiffs, did wrongfully and deceitfully encourage and persuade the said plaintiff, to sell and deliver to *Samuel Rae, Jr.,* and *Thomas W. Rae,* partners in trade, divers goods on credit to a large amount, and did for that purpose, falsely and deceitfully and fraudulently assert and affirm to the said plaintiff, that he the said defendant had given to the said *Thomas W. Rae,* and *Samuel Rae, Jr.,* partners as aforesaid, the sum of $3000, and that they ought to do a good business and a safe one for their creditors, and did thereby falsely, fraudulently and deceitfully cause and procure the said plaintiff to sell and deliver the last mentioned goods, wares, &c., upon trust and credit

to the said *J. W. Rae* and *Samuel Rae, Jr.*, partners as afore-
said. The declaration then proceeded to allege a sale and de-
livery of the goods; the falsehood of the defendant's represen-
tations, and the non-payment of the debt by the purchasers.
There were other counts in the declaration of the same char-
acter, to which the defendant pleaded *not guilty.*

FIRST EXCEPTION.—The plaintiffs to support the issue on
their part, proved by *Joseph Smith, junior,* a competent wit-
ness, that he was a clerk and salesman in the plaintiffs' em-
ployment, from September 1835, inclusive, to July 1836.
That he was acquainted with the defendant and his two sons,
*Thomas W. Rea,* and *Samuel Rea, Jr.;* that in September
1835, one of the sons came to the plaintiffs' store in *Balti-
more,* where witness then was, and bought a small bill of
goods, the amount of which witness does not exactly recol-
lect, but it did not exceed $400; that witness made this sale
and gave said sons credit, because of his own knowledge of
them, and from statements made by them to *Mr. Addison B.
Riley,* of the firm of *Gaither & Co.,* and by *Mr. Riley,* repeat-
ed to witness, which statements, as *Mr. Riley* repeated them,
were, that their father the present defendant, had given them
three or four thousand dollars to go into business with. These
statements were repeated by witness to *Mr. Samuel G. Wyman,*
one of the plaintiffs; and *Mr. Wyman* requested witness to
enquire of *Mr. Rea,* the defendant, when he next saw him,
whether such statements were correct, and what capital he had
given to his sons; accordingly, when witness again saw the
defendant, which was in the last of September or beginning
of October 1835, in the store of the plaintiff, on a visit, which
defendant, who lived in *Winchester,* made at that time to *Bal-
timore,* witness asked him whether the statements above men-
tioned were correct, and what was the amount of capital he
had given to his sons, as *Mr. Wyman* was anxious to know,
as it was probable the sons might want to make further pur-
chases from *S. Wyman & Co.,* and the object of the inquiry
was, to ascertain whether it would be safe to continue to do
business with them; to which the father replied, that he had

given them three or four thousand dollars, and that they ought to do a good and safe business. Witness does not recollect whether defendant said three or four thousand dollars, but it was a precise sum of which he spoke, and either one or other of them; that witness reported this conversation with the defendant to the plaintiffs, and afterwards, and on the credit which the above representations procured for the sons, sold goods to them so long as witness continued in the service of the plaintiffs' sales, which, but for such representations he would not have made. Witness left the employment of the plaintiffs in July 1836. On cross examination he stated, that he was now a member of the firm of *Stewart, Smith and Ames,* formerly *William P. Stewart & Co.,* which firm was a creditor of the said *T. W.* and *S. Rea, Jr.* Examined in chief he says, that he has no interest in the result of the present suit. In reply to a question on the part of the defendant he says, that it is generally understood, that when a dealing is commenced between a mercantile firm and a country merchant, it will be continued for years, if the parties are mutually satisfied. The plaintiffs then further to support the issue on their part, proved by *Lucius Reed,* a competent witness, that the said *T. W.* and *S. Rea, Jr.,* were at the time of the institution of this suit, and still are, indebted to the plaintiffs for goods purchased from them in September in the year 1836. When the witness had proceeded thus far in his testimony, he was interrupted by the defendant's counsel, who enquired of him whether notes had been given for the goods so purchased? Witness replied that the plaintiffs held two notes for such purchases, but did not say what were their dates, or whether payable on demand or otherwise. The counsel for the defendant then objected to the further testimony of witness in regard to said indebtedness, until the said notes were produced; and prayed the court to decide, that any further testimony in relation to such sales of goods made to said *T. W.* and *S. Rea* by plaintiffs, on the faith of defendant's representations hereinbefore stated, was inadmissible until said notes were produced or their non-production legally and satisfactorily accounted for; which deci-

sion the court (MAGRUDER and PURVIANCE, A. J's.) gave. The plaintiffs excepted.

The plaintiffs having offered the evidence set forth in the first bill of exceptions, which is to be taken as a part of this bill of exceptions, as if incorporated at length therein, and after the decision of the court as stated in said first bill of exceptions, and for the purpose of accounting for the non-production of the note of $1,166.29, at the trial offered all the following evidence in this bill of exceptions, viz: he offered to prove by *Lucius Reed*, a competent witness, that the plaintiff had in the month of September 1836, sold bills of goods to the said *T. W.* and *S. Rea, Jr.*, to the amount respectively of $1,166.29, and $278.64, on six months credit, and that two notes were taken for said sums respectively, one of said notes for $278.64, which had been taken, when on the expiration of the credit on one of said sales, the amount due thereon had not been paid; and offered to prove by *Thomas Phenix*, cashier of the *Western Bank of Baltimore*, that a note for $1,166.29 had been placed by the plaintiff in said *Western Bank*, by which it had been sent to the *North Western Bank of Virginia* for collection; in the usual course returned to the said *Western Bank* unpaid, and handed back again by said *Bank* to the plaintiffs. They also offered to prove by the said *Lucius Reed*, that the other of said notes for $1,166.29, before spoken of by said *Reed*, had been sent to *Morgan Neilson*, the plaintiffs' attorney at *Wheeling*, to be placed in a train for recovery, and that the said last note still belonged to the said plaintiffs, and was still unpaid. They also offered to prove by *Neill Barnett*, a competent witness, that in March or April 1837, the defendant being informed by his son *James Rea*, of the involved situation of *T. W.* and *S. Rea*, induced the witness, who resided in *Winchester*, to go to *Wheeling*, and undertake to get security for a debt claimed to be due to said defendant by his said sons *Thomas W. Rea* and *Samuel Rea, Jr.*, and that on the 19th April 1837, said *T. W.* and *S. Rea, Jr.*, executed the deed of trust hereinafter inserted to the said *Neill Barnett*, of all their property of every description, and

that on the 15th October following, they executed another deed of trust *hereinafter* inserted, to the same trustee of the same property. The plaintiffs further offered in evidence the admission by the defendant's counsel, that said deeds of trust are true copies of the original deeds, and that the same are to be received as evidence in this cause, as if they were duly and legally authenticated; and that the defendant knew of the execution of the said deeds, and claimed from the trustees payment of certain claims of his, according to the preference given to him therein. The plaintiffs also offered to prove by the said *Neill Barnett,* that under the said deeds he had received all the property of the said *T. W.* and *S. Rea, Jr.*, and that the debts therein mentioned to be due to the said plaintiffs, had not been paid by him in whole or in part; that there were about $6000 in his said trustee's hands, which would be enough to pay the defendant in full, and leave a small dividend for the merchants to whom *T. W.* and *S. Rea, Jr.* were indebted.

This indenture made on the 19th day of April 1837, between *Thomas W. Rea* and *Samuel Rea, Jr.*, merchants trading under the name and firm of *T. W.* and *S. Rea, Jr.*, of the city of *Wheeling* and State of *Virginia*, of the first part, and *Neill Barnett* trustee, of the second part, and *Samuel Rea, Sen.*, *Bank of the Valley in Virginia, Neill Barnett, George R. Gaither & Co., Janney, Hopkins & Hull, S. Wyman & Co., J. & W. Lockwood & Co. Weith and Norris, Marriott & Hardesty, Baltzell & Payne, and William P. Stewart & Co.*, of the third part, witnesseth, that whereas the said parties of the first part are indebted to *Samuel Rea, Sen.*, in the sum of $2,950, due by note dated September 10th 1835, drawn on demand, and for a balance due by account of $219,93; and to the *Bank of the Valley*, &c. &c., reciting various debts due and to become due; and to *S. Wyman & Co.* in two notes, one for $1,137.67, and one note for $294. And the said *T. W.* and *S. Rea, Jr.* being willing and desirous to secure the payment of the said debts with the accruing interest, to the above named parties, also to secure harmless the said *Samuel Rea, Sen.*, in consequence of his endorsement of the note aforesaid, in the *Bank*

*of the Valley*, or any note which may be substituted in lieu thereof, whether the same shall be for the whole amount or any part thereof, have agreed to convey the property hereinafter mentioned for that purpose. Now this indenture witnesseth, that the said *T. W.* and *S. Rea, Jr.*, as well for the considerations aforesaid, and for the further sum of one dollar to them in hand, paid by the said party of the second part, at or before the sealing and delivery hereof, the receipt whereof is hereby acknowledged, have granted, bargained and sold, and by these presents do grant, bargain and sell unto the said *Neill Barnett*, his heirs, &c., the following personal property, to wit: all the goods, wares and merchandize of every description and kind, now in the possession of the said *T. W.* and *S. Rea, Jr.*, in the store house rented by them on *Market street*, in the city of *Wheeling*, also all the books, accounts, notes and bonds, which is now due the said *T. W.* and *S. Rea, Jr.;* to have and to hold the aforesaid property to him the said *Neill Barnett*, trustee, his heirs, executors, &c., forever, upon the special trust and confidence, that if the said *T. W.* and *S. Rea, Jr.* shall fail to pay off and discharge the debts aforesaid, that then and in that event, it shall be the duty of the said trustee, his executors or administrators, upon the request of the said *Samuel Rea, Sen.*, or his executors, &c., to sell the property hereby conveyed, and collect the book accounts, notes and bonds, as the case may be, or so much thereof as may be necessary to satisfy and pay off the said debts, to the highest at public sale, having first established the time and place of such sale, by advertising the same for three weeks, in some newspaper printed at *Wheeling*, and out of the proceeds of such sale, first pay off and satisfy the debts aforesaid, or so much thereof as may remain due and unpaid, after deducting the expenses of executing this trust, including a commission of five per cent.; and the overplus if any, pay to the said *T. W.* and *S. Rea, Jr.*, their heirs, &c. But said property shall be so managed and disposed of by said trustees, as to give the preference and priority to the debts due *Samuel Rea, Sen.*, individually, as well as to secure him harmless as endorser, as fully and

completely as if the said debts were secured by a separate and elder deed of trust.    It is agreed that the aforesaid property may remain in the possession of the said *T. W.* and *S. Rea,* *Jr.*, until a sale shall become necessary under this trust, when the said *T. W.* and *S. Rea, Jr.*, will permit the said trustee to take peaceable possession thereof for the purpose aforesaid; and the said trustee covenants for himself and his heirs, with the said parties of the first and third parts, faithfully execute the duties hereby reposed in him.    In witness whereof, the parties have hereunto set their hands and seals, the day and year first above written.    Thomas W. Rae,    (Seal.)

Samuel Rae, Jun.,    (Seal.)

Neill Barnett,    (Seal.)

This indenture made this 15th day of October 1837, between *Thomas W. Rea* and *Samuel Rea, Jr.*, of the city of *Wheeling* of the first part, and *Neill Barnett* of the second part: Whereas, the said parties of the first part being indebted to *Samuel Rae, Sen.*, *of Winchester, Virginia,* in the sum of $2,950, on a promissory note, dated, &c., also for a balance of account for $219.93, to the *Bank of the Valley,* in the sum of, &c., reciting various debts to *S. Wyman & Co.,* in two notes, one for $1,137.67, the other for $294. And whereas said parties of the first part, for the purpose of securing the payment of said debts, did by deed bearing date the 19th of April 1837, sell and convey unto the said party of the second part, his heirs, &c., all the goods, wares and merchandise of every description and kind, then in the possession of the said parties of the first part, in the store rented by them on *Market street* in the city of *Wheeling,* and also all book accounts, notes and bonds, which were then due the parties of the first part, in trust for the purposes in said deed set forth, which said deed was presented in the clerk's office of the county court of *Ohio* county, and upon the acknowledgment of said parties of the first part, and admitted to record on the twentieth day of June, one thousand eight hundred and thirty-seven; (all which premises, reference being had to said deed, will more fully and at large appear,) and whereas the said debt of $125, in said deed

of trust mentioned, as due to said party of second part, has since the execution thereof been fully paid and satified, and said parties of the first part being advised, that said deed of trust is of doubtful validity, and being willing and desirous to confirm the same, and to secure the payment of the debts therein and herein recited, (except the said debt of one hundred and twenty-five dollars to said party of second part, which has been already paid as aforesaid.) Now this indenture witnesseth, and for the further consideration of five dollars to them in hand paid, at and before the ensealing and delivery hereof, the receipt whereof is hereby acknowledged, the said parties of the first part have granted, bargained and sold, and by these presents do grant, bargain and sell unto said party of second part and his assigns, all the following personal property, to wit, all the goods, wares and merchandizes of every description and kind, now in the possession of the said parties of first part, in the store room occupied by them on *Market street* in said city of *Wheeling;* and also all the book accounts on the books of said parties of first part, due and to become due; and also all bonds, notes, bills of exchange and other causes in action and evidences of debt, due or to become due to said parties of the first part, (which said book accounts, bonds, bills, notes and other evidences of debt, and causes in action, are hereby assigned to said party of second part,) to have and to hold the said property, bonds, bills, notes, book accounts, causes in action and evidences of debt to said party of second part, and his assigns forever, to have and to hold the said premises unto the said parties of second part, and his assigns forever. Upon trust nevertheless that the said party of the second part shall proceed to take possession of said premises, and after fixing the time and place of sale, and giving four weeks notice thereof, in some public newspaper printed in the city of *Wheeling*, shall sell the same at public auction for cash, or on a credit, as to said trustee shall seem best, for the interest of all concerned, and shall also proceed to collect the said book accounts, bonds, bills, notes and other debts, and out of the proceeds thereof, shall after paying the expenses of sales and

collection, and all other expenses attending the execution of this trust, and reserving to himself five per centum on the amount of said sales and collection, first pay to the said *Samuel Rea*, *Sen.*, the said sum of two thousand nine hundred and fifty dollars, due by said note, and also said balance due by account of two hundred and nineteen dollars and ninety-three cents; and also to pay and satisfy the said debt due to said *Bank of the Valley* for two thousand dollars, together with all interest which may have occurred upon said debts; and secondly pay and satisfy all the other debts recited in this and the former deed of trust, (except the said debt to the said party of second part,) which has been paid as aforesaid pro rata; and the balance if any, shall pay to said parties of first part or their assigns; and it being uncertain whether the debts recited herein are of the exact amounts stated, it is intended hereby to secure the true amounts due to the several creditors herein named. The debt due the *Bank of the Valley* has been paid since the execution of the former deed, the sum of fourteen hundred and sixty-two dollars, and its being recited in the foregoing part of this deed at two thousand dollars, was, because that was the amount of the original note. The stock of goods, wares and merchandize hereby conveyed, amounts per invoice to six thousand five hundred and sixty-eight dollars and seven cents, and the debts due said parties of first part, are enumerated in the schedule hereto annexed, as part of this deed. In testimony whereof, said parties of first part have hereunto set their hands and seals, as also said party of second part.

Thomas W. Rea, (Seal.)
Samuel Rea, Sen., (Seal.)
Neill Barnett, (Seal.)

Schedule referred to—List of debts due *T. W.* and *S. Rea, Jr.* Morgan S. Gregg, $309.16, subject to his account, &c.

To which testimony so offered for the purpose of accounting for the non-production of said note of $1,166.29, at the trial the defendant's counsel objected, and the court (Magruder and Purviance, A. J's.,) sustained the objection. The plaintiffs excepted, and brought this appeal.

The cause was argued before ARCHER, DORSEY, CHAMBERS, and SPENCE, J.

By LATROBE for the appellants, and
By NELSON for the appellee.

ARCHER, J., delivered the opinion of the court.

The taking of a note for goods sold and delivered, certainly does not extinguish the original cause of action. An action on the common counts, may be sustained by proof of the sale and delivery of the goods, although a note may have been given therefor: 17 *Seargt. and Low.* 152. If however a note has been given, in such case the production of the note is generally required, for the security of the defendant, and not from any rule of evidence which would prevent the introduction of evidence of indebtedness, without the production of the note. It was clearly competent we think, for the plaintiff to produce other and further evidence of indebtedness, without producing the notes taken for the goods.

If it were important for the defendant to show, that the credit given on the notes had not expired, the burthen of such proof was upon him. He should have given notice to have them produced, and if not produced, proved their contents.

There is no evidence in this bill of exceptions to show the notes were on time, and the law certainly makes no such inference. We therefore think the court erred in the opinion by them expressed in the *first* bill of exceptions.

The evidence in the second bill of exceptions was offered to account for the non-production of the note; the court rejected the evidence. If the plaintiff, as we have seen, was not bound to produce the note, he was cartainly under no obligation to account for its non-production, and the testimony offered with such view, and such view only, was useless, unnecessary and inadmissible. We concur with the court in the opinion by them expressed in the second bill of exceptions.

JUDGMENT REVERSED AND PROCEDENDO AWARDED.